Nancy HARVEY and Jim Harvey, h/w, Appellants

v.

ROUSE CHAMBERLIN, LTD. and J.L. Watts Excavating, Appellees.

Superior Court of Pennsylvania.

Submitted Jan. 17, 2006.

Filed June 2, 2006.

Keith W. Kofsky, Philadelphia, for appellants.

Theodore P. Winicov, Philadelphia, for Rouse, appellee.

Joseph A. Chellew, III, Perkasie, for Watts, appellee.

BEFORE: MUSMANNO, PANELLA, and TAMILIA, JJ.

OPINION BY: PANELLA, J.:

■ ¶ 1 Appellants, Nancy and Jim Harvey, appeal from the judgment entered on September 12, 2005,[1] in favor of Appel-

---

1. Appellants purport to appeal from the order denying their post-trial motion. *See* Notice of Appeal, 6/8/05. "Orders denying post-trial motions, however, are not appealable. Rather, it is the subsequent judgment that is the appealable order when a trial has occurred." *Cauthorn v. Owens Corning Fiberglas Corp.*, 840 A.2d 1028, 1030 n. 1 (Pa.Super.2004) (citation omitted). *See also, Billig v. Skvarla*, 853 A.2d 1042, 1048 (Pa.Super.2004) ("[I]n a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit."). Judgment was not entered until September 12, 2005, thus Appellants' notice of appeal was prematurely filed. Despite Appellants' error in prematurely filing their notice of appeal, this Court will address the appeal be-

lees, Rouse Chamberlin, Ltd. ("Rouse Chamberlin") and J.L. Watts Excavating ("Watts"), in the Court of Common Pleas of Bucks County. This is a slip and fall case. At the close of Appellants' case-in-chief, Appellees moved for nonsuit arguing that the "hills and ridges" doctrine precluded a finding of liability. The trial court agreed and granted the nonsuit. After careful review, we reverse.

¶ 2 Appellants live in the Windtree Development in Plumsteadville Township, Bucks County. In January 2001, a section of the development was still under construction and the roads in the development had not yet been dedicated. As such, the roads were still owned by the developer, Rouse Chamberlin. During the winter of 2001, Rouse Chamberlin had contracted with Watts to provide snow plowing services in the development.

¶ 3 On January 20, 2001, it began to snow in the development and the snow continued through the early morning hours of January 21, 2001. After it had stopped snowing, and the roads had been plowed by Watts, Nancy Harvey decided to take a walk in the development. During her walk, Nancy walked on the sidewalk, but, at times, had to walk on the street as portions of the sidewalk had not been cleared. Nancy observed that some portions of the road were covered with packed down snow from being plowed and that there were patches of cleared asphalt. As Nancy approached the sidewalk in front of a home owned by Maria Rolleri, she ob-

served that there was snow on the sidewalk. Consequently, Nancy decided to walk in the road, which appeared to be clear and dry. While walking in the road, Nancy slipped and fell on black ice and sustained injuries.

¶ 4 On October 9, 2001, Nancy and her husband, Jim Harvey, commenced this action by the filing of a complaint in which Nancy alleged negligence against the Appellees.[2] After discovery, the case proceeded to trial on January 24, 2005. At trial, conflicting evidence as to salting was presented.[3]

¶ 5 After the close of Appellants' case-in-chief, Appellees moved for a compulsory nonsuit based on the "hills and ridges" doctrine. The trial court took the matter under advisement and on the next day, January 26, 2005, despite conflicting evidence, granted the Appellees' motions for nonsuit, finding that the "hills and ridges" doctrine precluded a finding of liability.

¶ 6 Appellants filed a post-trial motion requesting removal of the nonsuit and the grant of a new trial. The trial court subsequently denied the motion and Appellants then prematurely filed a notice of appeal as judgment had not been entered on the trial court docket as of the time the notice of appeal was filed. As noted, Appellants subsequently entered judgment on September 12, 2005.

¶ 7 Appellants purport to raise four issues on appeal, *see* Appellants' Brief, at 4,

cause judgment has been entered on the verdict. *See Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division,* 781 A.2d 1263, 1266 n. 3 (Pa.Super.2001), *aff'd,* 571 Pa. 60, 811 A.2d 565 (2002), *cert. denied,* 539 U.S. 903, 123 S.Ct. 2252, 156 L.Ed.2d 112 (2003). We have corrected the caption accordingly.

2. Jim asserted a sole claim for loss of consortium. With respect to the negligence count, the complaint alleged, *inter alia,* that the Ap-

pellees failed to "lay sufficient amounts of salt or its equivalent" on the road surface and that they "failed to exercise due care under the circumstances ...." Complaint, filed 10/9/01, at ¶ 13(h) and (j).

3. As will be discussed *infra,* Appellants called James Watts, the snow plow operator, and Kevin Kirka, the salt truck operator, as if on cross-examination.

but essentially raise only one: Whether the trial court erred in concluding that the "hills and ridges" precluded liability and, thus, improperly failed to remove the non-suit and grant a new trial.

¶ 8 Our standard of review is well-established: "A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action had been established." *Brinich v. Jencka*, 757 A.2d 388, 402 (Pa.Super.2000), *appeal denied*, 565 Pa. 634, 771 A.2d 1276 (2001) (citation and internal quotation marks omitted). Furthermore, all conflicts in the evidence must be resolved in the plaintiff's favor. *See Gigus v. Giles & Ransome, Inc.*, 868 A.2d 459, 461 (Pa.Super.2005), *appeal denied*, 586 Pa. 758, 895 A.2d 550, 2006 WL 544541 (2006). In reviewing the evidence presented we must keep in mind that a jury may not be permitted to reach a verdict based on mere conjecture or speculation. *See Brinich*, 757 A.2d at 402. We will reverse only if the trial court abused its discretion or made an error of law. *See Weiner v. Fisher*, 871 A.2d 1283, 1285 (Pa.Super.2005).

¶ 9 As mentioned, the trial court granted nonsuit on the basis of the "hills and ridges" doctrine. In *Harmotta v. Bender*, 411 Pa.Super. 371, 601 A.2d 837 (1992), *appeal denied*, 530 Pa. 655, 608 A.2d 30 (1992), we stated that

> [t]he doctrine of hills and ridges provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

*Id.*, at 841 (quoting *Gilligan v. Villanova University*, 401 Pa.Super. 113, 584 A.2d 1005, 1007 (1991)). The "hills and ridges" doctrine "protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1087 (Pa.Super.1997) (citation omitted), *appeal denied*, 555 Pa. 708, 723 A.2d 1025 (1998).

¶ 10 We cautioned in *Bacsick v. Barnes*, 234 Pa.Super. 616, 341 A.2d 157 (1975), however, that "the 'hills and ridges' doctrine may be applied only in cases where the snow and ice complained of are the result of an *entirely natural accumulation*, following a recent snowfall," *id.*, at 160 (emphasis added), as we reiterated that the protection afforded by the doctrine "is predicated on the assumption that '[t]hese formations are [n]atural phenomena incidental to our climate,'" *id.* (quoting *Rinaldi v. Levine*, 406 Pa. 74, 78, 176 A.2d 623, 625 (1962)).

¶ 11 In the present case, the trial court found that the "hills and ridges" doctrine precluded recovery because Nancy merely testified that she slipped on black ice and, therefore, did not establish that there was any type of accumulation of ice or snow.[4] *See* Trial Court Opinion,

---

4. Appellants argue that the "hills and ridges" doctrine is not applicable to Watts as he was not in possession of the land. In support of their argument, Appellants point to Watts' response to an interrogatory in which it states it was not in possession of the road. We note that this argument has no merit. The purported "admission" in the interrogatories is

8/9/05, at 6. The trial court also rejected Appellants' argument that the "hills and ridges" doctrine does not apply as the ice was of artificial origin in that it formed as the result of Watts' plowing. In rejecting Appellants' argument the trial court distinguished *Bacsick.*

¶ 12 In *Bacsick*, it had snowed twelve to fifteen inches two days prior to the day when Bacsick was struck by a car when she was forced to walk on the street because the sidewalk was inaccessible due to a snow bank. This Court concluded that the snow bank was of artificial origin as the evidence showed that "it was apparently deposited as the result of the plowing of the street by the city and state snow plows." 341 A.2d at 160. Thus, the doctrine was inapplicable.

¶ 13 In the present case, the trial court distinguished *Bacsick* as follows:

Inherent in the *Bacsick* [C]ourt's holding was that some type of outside influence was required to create the artificial condition. Specifically, in that case, it was human interference that created the artificial condition out of what was once a natural condition (i.e., plowing of the snow). Here no indication can be found that the black ice that caused plaintiff's fall was a result of human interference. The *resulting* black ice was a natural condition.

Trial Court Opinion, 8/9/05, at 7 (emphasis added).

¶ 14 We are not persuaded by the trial court's attempt to distinguish *Bacsick.* The undisputed evidence in this case consists of a snow storm that was subsequently followed by Watts' plowing of the road

and a later slip and fall on black ice. Just as in *Bacsick*, the evidence introduced by Appellants in this case suggests that the condition of the land was influenced by human intervention. In other words, given Watts' interaction with the *snow via* plowing, the *ice* in this case could not have been "the result of an *entirely natural* accumulation."

¶ 15 In addition, Appellants developed another factual issue: Kevin Kirka testified that the purpose of salting after plowing is to melt the remaining residue left after plowing and that a sufficient amount of salt should be placed on the road to prohibit the formation of ice. *See* N.T., 1/25/05, at 33. Whether a sufficient amount of salt was applied was a factual issue which also barred a nonsuit. Accordingly, we find that the trial court erred in affording Appellees protection from liability pursuant to the "hills and ridges" doctrine.

¶ 16 With respect to Watts, the trial court contends that even assuming the "hills and ridges" doctrine was inappropriately applied, Appellants were unable to maintain a cause of action against Watts. *See* Trial Court Opinion, 8/9/05, at 9. The trial court's conclusion centers on the assertion that "Watts plowed and salted the roads of the Wyndtree subdivision." *Id.* The evidence in the record, however, is conflicting with respect to the salting of the road.

¶ 17 As aforesaid, Kevin Kirka testified at trial that the purpose of salting after plowing is to melt the remaining residue left after plowing and that a sufficient amount of salt should be placed on the

---

simply an erroneous legal conclusion which does not bind Watts. It is undisputed that Watts was an independent contractor. It is a well-established principle that "[a]n independent contractor is in *possession* of the necessary area occupied by the work contemplated

under the contract...." *Motter v. Meadows Ltd. Partnership*, 451 Pa.Super. 520, 680 A.2d 887, 890 (1996) (emphasis added and citation omitted). In any event, given our disposition, Appellants' argument in this regard is a moot point.

road to prohibit the formation of ice. *See* N.T., 1/25/05, at 33. Kirka further testified on direct examination that he used salt on the roads in the Wyndtree development. *See id.,* at 44.[5] On re-cross-examination, however, Kirka, while still maintaining that he salted the roads, was impeached by a prior statement made in his deposition where he testified that he could not remember whether he salted the roads. *See id.,* at 49–50.

¶ 18 James Watts testified that if the plowing and salting were performed correctly one would not expect to see black ice. *See id.,* at 91.

¶ 19 Maria Rolleri testified that she had noticed that Nancy had fallen and went to check on her. When she went out to attend to Nancy, Maria Rolleri noticed that the road had not been salted and that "there was black ice" and she could "see the shiny surface." *Id.,* at 110–111.

¶ 20 Jim Harvey testified that when he arrived at the spot where his wife fell he observed that some areas of the road were covered in ice. *See id.,* at 137. Nancy Harvey testified that she fell on a patch of black ice that was "quite large." *Id.,* at 181.

¶ 21 This Court has stated that

a nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the [non-moving party], could determine in his favor the controlling issues involved.

*McMillan v. Mountain Laurel Racing, Inc.,* 240 Pa.Super. 248, 367 A.2d 1106, 1107–1108 (1976) (citation omitted). *See*

also, *Schmoyer by Schmoyer v. Mexico Forge, Inc.,* 437 Pa.Super. 159, 649 A.2d 705, 707 (1994) ("Although the question of negligence usually should be submitted to the jury, where the facts leave no room for doubt, the judge may properly dispose of the issue without a jury.") (citation and internal quotation marks omitted).

¶ 22 Given this standard, and the testimony of record, which leaves ample room to doubt Watts' position that it properly salted the roads, we find that the trial court clearly erred in entering a nonsuit in favor of Watts.

¶ 23 Judgment reversed. Jurisdiction relinquished.

---

**5.** Salting is performed by use of a one-ton dump truck equipped with an adjustable salt spreader. *See* N.T., 1/25/05, at 35.