J-S41044-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MALTA LOPEZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ALBRIGHT COLLEGE, | : | |
| | : | |
| Appellee | : | No. 528 MDA 2019 |

Appeal from the Order Entered February 22, 2019
in the Court of Common Pleas of Berks County
Civil Division at No(s): 17-19359

BEFORE:  LAZARUS, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:　　　　**FILED OCTOBER 04, 2019**

Malta Lopez appeals from the judgment entered on February 22, 2019, which granted summary judgment in favor of Albright College (Albright) in this slip and fall case.  After review, we reverse the order granting summary judgment.

We glean the following relevant factual and procedural history from the record.  A major snow storm, calling for up to three feet of snow, was predicted to begin during the overnight hours of March 13-14, 2017, in Reading, Berks County, Pennsylvania, where the parties are located.  Light snow started about 9:00 p.m. on March 13, 2017, with accumulation starting around 11:30 p.m. that night.  Overnight it changed to heavy snowfall such that areas where snow had been removed became re-covered with snow within the hour.  Around 9:00 a.m. on March 14, 2017, the snow changed to

_____

* Retired Senior Judge appointed to the Superior Court.

freezing rain and sleet, and then changed back to snow around noon on that day, making for icy conditions.

Between March 13 and March 14, 2017, the total snowfall was between 16 and 18 inches, which compacted down to 12 to 14 inches due to rain, sleet, and freezing rain. On March 13, 2017, Albright preemptively decided to close the following day, March 14, 2017, due to inclement weather. Albright operated on a two-hour delay on March 15, 2017.

According to Lopez, she fell at about 7:45 p.m. on March 15, 2017, on the sidewalk of 13th Street near Albright's athletic center. On October 31, 2017, Lopez filed a civil complaint against Albright, complaining her fall was due to Albright's negligence. After the pleadings closed, the parties conducted discovery, which included the depositions of Lopez, Steve Yascoe, a public safety officer and shuttle driver for Albright, and Rick O'Leary, Albright's Grounds Manager.

Lopez testified during her deposition that her daughter had a work shift at the local supermarket from 4:00 to 8:00 p.m. on March 15, 2017, and that Lopez always walked her daughter to and from work. Lopez stated that she walked her daughter to work at about 3:45 p.m. that day, and then returned home on foot, using the same route via the 13th Street sidewalk. According to Lopez, when it was time to pick up her daughter from work, Lopez walked the same route a third time, slipped and fell on the sidewalk at

about 7:45 p.m., and injured her right arm. Just after Lopez fell, she walked across 13th Street to where Yascoe was located and told him about her fall.

Yascoe testified during his deposition that the weather on March 15, 2017, was snowy and icy. After Lopez told him she had fallen, he asked if she needed medical attention, and Lopez declined. After receiving permission from his supervisor, Yascoe transported Lopez to the supermarket to pick up her daughter and then drove Lopez and her daughter to Lopez's house. Yascoe then returned to work and completed an incident report that night.

O'Leary testified during his deposition that Albright's grounds crew arrived to perform snow removal around 11:00 p.m. on March 13, 2017, and worked straight through for roughly 24 hours. Albright's campus was not fully cleared at this point, but was operational with areas of snow and ice on macadam and walkways. The crew returned about 4:30 a.m. on March 15, 2017. By the early morning hours of March 15, the main sidewalks and thoroughfares on Albright's campus were clear for foot travel.

O'Leary further testified that 13th Street is a main thoroughfare that was a high priority area to be cleared, and it received extra salt because it is a public walkway. The sidewalk where Lopez fell was constantly plowed and salted on March 14, 2017, and on March 15, 2017, that same area was salted at least three times, in addition to being plowed. To clear the sidewalks, the grounds crew plowed and salted. The crew's equipment had

- 3 -

plow cutting blades which plowed the entire width of the sidewalk from edge to edge. As the snow was plowed, it was piled to the right or left of the sidewalks.

After discovery, Albright filed a motion for summary judgment on November 7, 2018. Based on the evidence adduced during discovery, Albright contended that, pursuant to the hills and ridges doctrine,[1] it was not

---

[1] We have described the hills and ridges doctrine as "a long standing and well entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Collins v. Philadelphia Suburban Dev. Corp.*, 179 A.3d 69, 72 (Pa. Super. 2018), *quoting* *Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.*, 828 A.2d 1114, 1116 (Pa. Super. 2003). However,

> [t]he conceptual basis for the rule is not entirely clear. It appears to combine two separate principles: the notion that a possessor of land is ordinarily not liable for conditions that occur naturally, and the notion that liability for a dangerous condition not caused by the defendant himself should be imposed only where the danger existed for a sufficient period of time that failure to eliminate it can be deeded unreasonable.

3 West's Pa. Prac., Torts: Law and Advocacy § 5.14. The doctrine is not without its critics. As Judge Olszewski opined in his concurring opinion in *Morin v. Traveler's Rest Motel, Inc.*,

> The [hills and ridges] doctrine was developed to protect municipalities from unreasonable exposure to liability for injuries caused by climactic conditions. In order to prevail under the doctrine, a plaintiff must show more than a landowner's failure to exercise reasonable care. Plaintiff has the additional burden of demonstrating that ice and snow has been on the ground a sufficient length of time to accumulate as "hills and ridges."

*(Footnote Continued Next Page)*

- 4 -

J-S41044-19

liable for Lopez's claim of negligence. Albright's Motion for Summary Judgment, 11/7/2018, at ¶ 5. Lopez responded on November 14, 2018, asserting that the hills and ridges doctrine was inapplicable because the evidence established that the snow and ice upon which she fell "was not purely the result of a natural accumulation" and had been "manipulated or otherwise altered" by Albright. Lopez's Response in Opposition to Albright's Motion for Summary Judgment, 11/14/2018, at ¶ 5. Following argument, the trial court granted Albright's motion for summary judgment pursuant to the hills and ridges doctrine. Order, 2/22/2019, at 1; *see also* Trial Court Opinion, 4/11/2019, at 3.

_(Footnote Continued)_ ————————

Because of the practical difficulty of maintaining vast areas of public land, it is sound policy to limit the liability of those responsible for the maintenance of such land. In contrast, private business owners do not encounter the same practical difficulty maintaining their land. Consequently, I see no reason to shield private business owners from liability where an injured business invitee proves a business owner's failure to exercise reasonable care. I agree with Justice Roberts' concurring opinion in *Wilson v. Howard Johnson Restaurant*, [] 219 A.2d 676 ([Pa.] 1966) disapproving of the application of the doctrine to a business invitee. Justice Roberts' view did not carry the day, however, and the *Wilson* majority held that the hills and ridges doctrine applies to business invitees. Although I agree with [Morin] that the "hills and ridges" doctrine should not apply in this case, such change in the law must come from our Supreme Court.

704 A.2d 1085, 1089-1090 (Pa. Super. 1997).

- 5 -

This timely-filed appeal followed.[2] On appeal, Lopez argues that the trial court erred or abused its discretion in holding that the hills and ridges doctrine precluded Lopez's negligence claim. According to Lopez, there is a genuine issue of material fact as to whether the condition was "an entirely natural accumulation" and whether Lopez was exercising reasonable care when she fell. Lopez's Brief at 6.

In reviewing an appeal from the trial court's grant of a motion for summary judgment, we are governed by the following.

> Our scope of review of summary judgment orders is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

> Motions for summary judgment necessarily and directly implicate the plaintiffs' proof of the elements of their cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The

---

[2] Both Lopez and the trial court complied with Pa.R.A.P. 1925.

appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Collins***, 179 A.3d at 73 (citation, brackets, and ellipses omitted).

"For a party to prevail in a negligence action, a plaintiff must prove that the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." ***Id.*** (citation and internal quotation marks omitted). With respect to the hills and ridges doctrine, we have explained the following.

> The hills and ridges doctrine, "as defined and applied by the courts of Pennsylvania, is a refinement or clarification of the duty owed by a possessor of land and is applicable to a single type of dangerous condition, *i.e.*, ice and snow." ***Wentz v. Pennswood Apartments***,[] 518 A.2d 314, 316 ([Pa. Super.] 1986). ***See Williams v. Shultz***, [] 240 A.2d 812, 813-14 ([Pa.] 1968) (indicating that the doctrine of hills and ridges applies to preclude liability where "the accident occurred at a time when general slippery conditions prevailed in the community as a result of recent precipitation" (citations omitted)).
>
> In order to recover for a fall on an ice or snow covered surface, a plaintiff must show:
>
> > (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; [and] (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

- 7 -

> This Court has further opined that "the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove [the snow and ice] when it is in a dangerous condition."

***Biernacki***, 828 A.2d at 1117 (quotations omitted).

***Collins***, 179 A.3d at 74.

"The rationale for this doctrine has been explained as follows: ... to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere."

***Morin***, 704 A.2d at 1087-88 (citation omitted).

> The hills and ridges doctrine, however, is not without limitations.

> [P]roof of hills and ridges is not required when the hazard is not the result of a general slippery condition prevailing in the community, but of a localized patch of ice. ***Tonik v. Apex Garages, Inc.,*** [] 275 A.2d 296 ([Pa.] 1971); ***Williams v. Schultz***, [] 240 A.2d 812 ([Pa.] 1968). Nor is proof of hills and ridges required when an icy condition is caused by the defendant's neglect, as where a city maintains a defective hydrant, water pipe, drain, or spigot. ***Ward v. Pittsburgh***, [] 44 A.2d 553 ([Pa.] 1945).

***Harmotta v. Bender***, 601 A.2d 837, 842 (Pa. Super. 1992), *quoting*

***Bacsick v. Barnes***, 341 A.2d 157, 160 (Pa. Super. 1975).

Further, "the hills and ridges doctrine may be applied only in cases where the snow and ice complained of are the result of an entirely natural accumulation, following a recent snowfall. …[T]he protection afforded by the doctrine is predicated on the assumption that these formations are natural phenomena incidental to our climate[.]" ***Harvey v. Rouse Chamberlin,***

*Ltd.*, 901 A.2d 523, 526 (Pa. Super. 2006) (citations, internal quotation marks, and alterations omitted).

In the instant case, Lopez argues that the hills and ridges doctrine is inapplicable for two reasons. First, Lopez argues that the trial court erred in concluding that generally slippery conditions existed in the community, because the storm had ended at the time of her fall. Lopez's Brief at 11-12.

A review of the record shows that generally slippery conditions existed in the community at the time of Lopez's fall. Snow records prepared by O'Leary at the time of the storm confirmed that on March 13-14, 2017, a winter storm dumped 16 to 18 inches of snow in the area, and that a mixture of snow, rain, sleet, and freezing rain made for generally icy conditions. N.T., 7/31/2018 (O'Leary Deposition), at Pl. Exh. 1. The average temperature was below freezing at 28 degrees Fahrenheit, and the wet precipitation compacted the fallen snow several inches. *Id.* Albright closed due to inclement weather the day before Lopez fell, and operated on a two-hour delay the day of the incident. *Id.* Albright's incident reports show multiple reports of icy conditions throughout Albright's campus were reported on March 15 and 16, 2017. N.T., 7/31/2018 (Yascoe Deposition), at Pl. Exh. 2.

Lopez does not cite to any portion of the record to indicate that snow and icy conditions were not generally prevalent in the community. There

was no evidence that Lopez fell on a specific, localized patch of ice,[3] nor is there anything in the record to suggest that water from a hydrant, pipe, drain, or spigot caused the slippery condition. **See Harmotta**, **supra**. Instead, the evidence of record indicates that snow and icy conditions were prevalent in the area as a result of the recent storm. Accordingly, the trial court correctly held there was no material issue of fact regarding this prong of the hills and ridges doctrine.

Lopez next argues that the hills and ridges doctrine is inapplicable because the condition complained of was not the result of a natural accumulation, but instead due to Albright's plowing and salting. Lopez's Brief at 11-17. Lopez contends that the pile of plowed snow melted before the incident, and she theorizes that runoff from this snow pile then refroze and caused the slippery condition on the sidewalk. **Id.** at 16. Lopez characterizes O'Leary's testimony as evidence to support her theory. **See id.** At his deposition, O'Leary testified as follows:

> Q. Now, you understand the risk of what I'll call melt and refreeze?
>
> A. Yes, I understand refreeze.
>
> Q. Okay. And would you agree with me that there is a greater chance that snow would melt and refreeze on a sidewalk [if it] sort of sat directly next to the sidewalk as opposed to just totally removed?

---

[3] In fact, there is evidence to the contrary. Lopez testified that the slushy puddle appearance spanned the entire length of the sidewalk. N.T., 7/31/2018 (Lopez Deposition), at 20.

Q.    Say this again.

A.    Sure. So what we've established is we established
that essentially you guys are pushing the snow to
the side?

Q.    Uh-huh (yes.)

A.    You're not taking it away?

Q.    Okay. I'm not removing snow, yes.

A.    Correct.

Q.    Yeah.

A.    You're just sort of pushing it to the side of the
sidewalk. Now, if you had removed the snow, would
you agree with me that there's, I guess, a smaller
likelihood of a refreeze situation?

Q.    A smaller likelihood.

A.    Okay. And would you agree with me that refreeze
can be dangerous to pedestrians?

Q.    Yes.

A.    It could be dangerous to pedestrians because they
could – they could trip and fall. Correct?

Q.    Yes.

N.T., 7/31/2018 (O'Leary Deposition), at 23-24.

In this case, there is no dispute that a major snowstorm occurred,
which included rain, freezing rain, and sleet. The parties likewise do not
dispute that Albright plowed and salted the sidewalk where Lopez slipped
and fell. However, Lopez has developed a factual issue as to whether the

sidewalk's condition was caused by an artificial condition, *i.e.*, melting and refreezing due to the plowing and salting, as Lopez contends, or by a natural condition, *i.e.*, melting and refreezing due to freezing rain and sleet from the storm, as Albright contends.

As in **Harvey**, the records maintained by Albright suggest that the condition of the sidewalk could have been influenced by human intervention. 901 A.2d at 527. Given Albright's interaction with the snow via plowing and salting, it is possible that the sidewalk's condition in this case may not have been the result of an entirely natural accumulation. ***See id.***; ***but see Beck v. Holly Tree Homeowners Ass'n***, 689 F.Supp.2d 756, 765 (E.D .Pa. 2010) ("[T]he melting and refreezing of snow and ice cover is a natural cycle associated with temperature change."), *citing* **Casey v. Singer**, 93 A.2d 470, 472 (Pa. 1953).

Accordingly, we conclude that a genuine issue of material fact exists as to whether the sidewalk's condition was the result of an entirely natural accumulation. Thus, we find that the trial court erred in affording Albright protection from liability pursuant to the hills and ridges doctrine and granting Albright's motion for summary judgment.

Order granting summary judgment reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/04/2019</u>