J-S09033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DULCY L. GRACE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRAYSTONE COURT VILLAS, LLC | : | No. 1208 WDA 2022 |
| D/B/A GRAYSTONE COURT | : | |

Appeal from the Order Entered September 19, 2022
In the Court of Common Pleas of Blair County
Civil Division at No(s):  2020 GN 2791

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: September 13, 2023**

Dulcy L. Grace ("Grace") appeals from the order granting summary judgment in favor of Graystone Court Villas, LLC D/B/A Graystone Court ("Graystone").  We affirm.

Grace filed a complaint against Graystone alleging negligence following her slip and fall on Graystone's property ("the property").  Grace, in her complaint, alleged, *inter alia*, that on January 23, 2019, she was on the property, and she slipped and fell because of an unsafe "accumulation of ice and snow in the parking lot."  Complaint, 9/4/20, at ¶¶ 9-10.  Because of the fall, Grace alleged multiple physical injuries, including hand and ankle pain, an ankle fracture, muscle spasms, deltoid ligament damage, bruises, and emotional injuries, including "[n]ervousness, emotional tension, anxiety[,]

and depression." ***Id***. at ¶ 11(a)-(j).[1]  Grace averred that her fall and consequent injuries were due to Graystone's negligence in, *inter alia*, causing or permitting the unsafe condition to exist on the property. ***See id***. at ¶ 16(a)-(i).  Graystone filed an answer and new matter, Grace replied, and, following discovery, including deposition testimony by the parties, Graystone filed a motion for summary judgment. ***See*** Motion for Summary Judgment, 3/18/22; ***see also*** Brief in Support of Motion for Summary Judgment, 3/18/22.  Grace filed a response and supporting brief. ***See*** Plaintiff's Response, 4/18/22; ***see also*** Plaintiff's Brief, 4/18/22.  In her deposition testimony, discussed in more detail below, Grace stated, *inter alia*, that, on the evening of her fall, she picked her son up from his karate lesson, returned home, and just before she left home again to travel to the property, the weather changed, such that her own sidewalk was slippery, she had to scrape ice off her car, and the weather conditions at that time included "freezing rain and snow." ***See*** Trial Court Opinion, 9/19/22, at unnumbered *4.

Following oral argument in August 2022, the trial court issued an opinion and order granting summary judgment in favor of Graystone. ***See*** Opinion and Order, 9/19/22.  The trial court found that it is undisputed that Grace was a business invitee at the time of her fall on the property; and Graystone was

---

[1] Grace's complaint also named Jeff S. Long Properties, LLC D/B/A Jeff S. Long Construction ("Jeff S. Long Properties") as a defendant; however, on December 2, 2020, the parties agreed that Grace's action against Jeff S. Long Properties would be dismissed. ***See*** Order, 12/2/20.

responsible for exercising reasonable care in maintaining the property. **See** **id**. at unnumbered *3. However, the trial court ultimately concluded that "generally slippery conditions existed at the time of [Grace's] fall[,] and[,] hence[,] the ["]hills and ridges doctrine["] applies and precludes the instant liability action against [Graystone]." **Id**. at unnumbered *6. Grace moved for reconsideration on October 11, 2022. The trial court did not timely rule upon the motion, but Grace nevertheless timely filed a notice of appeal on October 14, 2022 from the September 19, 2022 order granting summary judgment. **See** Notice of Appeal, 10/14/22.[2] Both Grace and the trial court complied with Pa.R.A.P. 1925. **See** Plaintiff's Concise Statement, 11/9/22; **see also** Opinion and Order, 11/22/22.

Grace raises the following issues for our review:

1. Whether the trial court committed an abuse of discretion in granting [Graystone's] [m]otion for [s]ummary [j]udgment by usurping the role of the jury to decide a genuine issue of material fact as to whether the hazardous condition existing on the premises at the time of the incident consisted of a generally slippery area or a localized patch of ice[?]

2. Whether the trial court erred in granting [Graystone's] [m]otion for [s]ummary [j]udgment by implying that the

---

[2] The trial court issued an order on October 24, 2022 purporting to deny Grace's motion for reconsideration of the September 19, 2022 order. **Cf**. 42 Pa.C.S.A. § 5505 (authorizing a trial court to modify or rescind orders within thirty days of issuance); **see also Gardner v. Consol. Rail Corp.**, 100 A.3d 280, 283 (Pa. Super. 2014) (stating that "[if] a trial court fails to grant reconsideration expressly within the prescribed 30 days, it loses the power to act upon both the petition [for reconsideration] and the original order") (internal citation and quotations omitted; some brackets in original).

doctrine of [h]ills and [r]idges was controlling [and thereby] precluding [Graystone] from liability[?]

Grace's Brief at 3-4.

Our scope and standard of review for orders granting summary judgment is as follows:

> Our scope of review...[of summary judgment orders] . . . is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff['s] proof of the elements of [her] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either[, pursuant to Pa.R.C.P. 1035.2,] (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate [c]ourt may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Collins v. Philadelphia Suburban Dev. Corp.***, 179 A.3d 69, 73 (Pa. Super. 2018) (internal citation omitted).

Grace, in both of her issues, argues the trial court erred in granting summary judgment based on its conclusion that her fall occurred due to

"generally slippery" conditions, thereby triggering application of the hills and ridges doctrine, which precludes liability. As her two issues are related, we address them together. We begin with general negligence principles. This Court has explained that,

> [f]or a party to prevail in a negligence action, a plaintiff must prove that the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages. A land possessor is subject to liability for physical harm caused to an invitee only if the following conditions are satisfied:
>
> > [The land possessor] knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, [the possessor] should expect that the invitee will not realize it or will fail to protect [herself] against it, and the [possessor] fails to exercise reasonable care to protect the invitee against the danger.
>
> > An invitee must present evidence proving either the [possessor] of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition. What constitutes constructive notice depends on the circumstances of the case, but one of the most important factors to consider is the time that elapsed between the origin of the condition and the accident.

*Collins*, 179 A.3d at 73–74 (internal citations, quotations, and indentation omitted).

More specifically, to recover following a fall on a snow or ice-covered surface, a plaintiff must demonstrate:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was

- 5 -

the dangerous accumulation of snow and ice which caused the plaintiff to fall.

. . . [T]he only duty upon the property owner or tenant is to act within a reasonable time after notice to remove [the snow and ice] when it is in a dangerous condition.

***Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.***, 828 A.2d 1114, 1117 (Pa. Super. 2003) (internal citations and quotations omitted).

The hills and ridges doctrine is a "refinement or clarification of the duty owed by a possessor of land and is applicable to a single type of dangerous condition, *i.e.*, ice and snow." **Collins**, 179 A.3d at 75 (internal citation and quotations omitted). This Court has further explained:

[T]he doctrine of hills and ridges provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

The "hills and ridges" doctrine protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations.

. . . [H]owever, . . . the "hills and ridges" doctrine may be applied only in cases where the snow and ice complained of are the result of an ***entirely natural accumulation***, following a recent snowfall, as . . . the protection afforded by the doctrine is predicated on the assumption that these formations are natural phenomena incidental to our climate[.]

***Harvey v. Rouse Chamberlin, Ltd.***, 901 A.2d 523, 526 (Pa. Super. 2006) (internal citations, quotations, indentation, and brackets omitted; emphasis in original).

Grace argues that the trial court erred in granting summary judgment in favor of Graystone because she "was caused to slip and fall on an isolated patch of ice that was located behind her vehicle," rather than generally slippery conditions. ***See*** Grace's Brief at 15. Grace maintains Graystone "negligently allowed ice to accumulate in a particular spot of the parking lot of the premises," which caused the slip and fall. ***See id***. at 16. Grace asserts that the patch of ice she alleges she slipped on was not entirely natural, but, rather, due to the plowing and salting that occurred around 9:00 a.m. on the day she slipped and fell. ***See id***. at 20. Grace concludes that because the conditions were not generally slippery, nor was the accumulation of ice entirely natural, the hills and ridges doctrine did not apply, and the trial court erred in relying on it when it granted the motion for summary judgment.

The trial court considered Grace's arguments and concluded they merit no relief:

> It is undisputed that [Grace] was a business invitee on [the] property at the time of her fall. I[t] . . . is likewise clear that [Graystone] is charged with exercising reasonable care in maintaining the parking lot. There is no dispute that it was actively sleeting at the time [Grace] fell. The dispute in this case[] is whether the facts of record support the application of the doctrine of hills and ridges to shield [Graystone] from liability. [Graystone] claims the doctrine applies because the alleged icy condition occurred within a short period of time between when [Grace] picked her son up from his karate lesson, returned home and shortly thereafter left for her appointment at [the] property.

During this brief passage of time (45 minutes), [Graystone] argues the weather changed from snow flurries to sleet and freezing rain.

In support of their [m]otion, [Graystone] submitted portions of [Grace's] deposition testimony . . . . [Graystone] directs the [c]ourt to [pages] 23 and 25 of [Grace's] deposition wherein she confirmed her knowledge that the weather had changed from the time she took her son to karate until the time she left her home around 7:00 p.m. to drive to Graystone. Upon leaving her home, [Grace] testified to slippery conditions on her sidewalk. She testified that she had to scrape ice off of her car. She described the weather conditions as freezing rain and snow. [Graystone] argues the evidence is clear that generally slippery conditions existed in the area. In addition to [Grace's] testimony, [Graystone] produced a report from Dr. Scala . . . a meteorology expert who issued a report of the weather patterns that existed at the time of the fall. His report commented on the weather condition between 7:00 - 7:30 p.m. on January 23, 2019 in the vicinity of Graystone. The report confirmed precipitation in the form of freezing rain at the time of the fall at issue.

In opposition to the [m]otion, [Grace] argues that generally slippery conditions did not exist at the time of her fall and claims she fell on an isolated patch of ice [that Graystone had] negligently allowed to accumulate in the parking lot. . . ..

In support of [her] position, [Grace] refers to her deposition testimony [in which she] states that when she got out of her car at the . . . property, she took 3 or 4 steps prior to the fall. She stated she was walking with her hand holding on to the car. Basically, [Grace] seems to say that because she was able to take 3 or 4 steps without falling[,] that is evidence that the parking lot was not slippery in general. . . ..

The issue, as the [c]ourt sees it, is whether a question of fact exists as to whether generally slippery conditions existed at the time of [Grace's] fall or whether her fall was caused by an isolated icy patch. It is undisputed that freezing precipitation was actively falling at the time of the fall and had started shortly before the time that [Grace] left her home to drive to the premises of [Graystone]. Ice had formed on [Grace's] car while it was parked at her home and she had to scrape the ice prior to leaving. [Grace's] sidewalk at her home was slippery. [Grace] was aware

of the slippery conditions and took care as she walked. She testified to holding on to her car as a precaution. . . . Based on the evidence of record, the [c]ourt concludes that there is no question of fact that generally slippery conditions existed at the time of [Grace's] fall[,] and[,] hence[,] the hills and ridges doctrine applies and precludes the instant liability action against the property owner.

Trial Court Opinion, 9/19/22, at unnumbered *3-*6; **see also** Trial Court Opinion, 11/22/22, at unnumbered *2 (trial court adopting in its Rule 1925(a) opinion its prior opinion and order granting summary judgment).[3]

Following our review, we discern no error of law or abuse of discretion by the trial court in granting summary judgment based on application of the hills and ridges doctrine. We note the following: Grace testified in her deposition that she lived about two miles from the property where she slipped and fell. **See** Grace Deposition, 5/26/21, at 23, Reproduced Record ("R.") at 51a. She worked the morning of her accident from 6:00 a.m. to 2:30 p.m., and, that morning, it was wet out, with snow accumulation in nearby grass up to "[a]n inch or two." **Id**. at 19-20, R.47a-48a. When she returned home from work, the roads were dry. **See id**. at 20-21, R.48a-49a.[4] At about 5:45 p.m., Grace took her teenage son to his karate class, which was about a mile

---

[3] The trial court noted that while it reviewed Graystone's expert report, "that report merely served to corroborate the testimony of [Grace] concerning the icy conditions that existed at the time of her fall." **See** Trial Court Opinion, 11/22/22, at unnumbered *2.

[4] Landscape Supervisor Raymond L. Kennedy testified in his deposition that he salted and plowed the property at 9:30 a.m. **See**, **e.g.**, Kennedy Deposition, 11/9/21, at 17, R.102a. He later salted the property again at around 4:30 p.m. **See id**. at 23, R.108a.

away from her home. *See id*. at 21-22, R.49a-R.50a. There were snow flurries at 5:45 p.m. *See id*. at 22, R.50a. Grace took her son home following the completion of his class around 6:45 p.m. *See id*. at 21-22, R.49a-R.50a. She left home at around 7:00 p.m. for a 7:30 p.m. job interview at the property. *See id*. at 22-23, R.50a-R.51a. While the property was only two miles from her home, she was "giving [herself] plenty of time" to get there because in the interim, following when she returned home with her son, the weather conditions had changed to "freezing rain, snowing." *Id*. at 23, R.51a. Grace further described conditions as "a raining and snowing mix." *Id*. Grace noticed the ground conditions had changed from her house to her car and were now slippery. *See id*. at 24, R.52a. Both her driveway and sidewalk were slippery, and she had "[a] little bit" of difficulty walking from her sidewalk to get to her car. *Id*. at 25, R.53a. Grace had to scrape ice off her windows which had not been there when she arrived home with her son. *See id*. at 25-26, R.53a-54a. She described the "[t]own roads" as being "a little slick," though the "main road seemed okay." *Id*. at 26, R.54a. It was dark out at this time. *See id*. at 27, R.55a. It was continuing to "snow and ice up on the surface of the ground" from when she left her house up to the time she parked at the property, and she described it as a "hard snow/ice/rain kind of situation that was coming down." *Id*. After parking at the property, Grace had to walk across the lot to get to the building where her interviewer was waiting for her. *See id*. at 31-32, 34-35, R.59a-60a, R.62a-63a. The lighting in the lot was sufficient for her to see where she was going. *See id*. at 36, R.64a.

Grace testified that she got out of her car and walked three or four steps toward the back of her car where she was going to begin crossing the lot, and "when I got to the back of the car, my feet went out from under me, and there I went." *Id*. at 36-37, R.64a-65a. While she was holding onto the car "[b]ecause I'm always afraid whenever it's yucky outside," she did not slide during the three or four steps she took before she fell. *Id*. at 37, R.65a. It continued to rain and snow after Grace fell. *See id*. at 46, R.74a. She recalled "snow, sleet, freezing rain" at that time. *Id*. at 48-49, R.76a-77a. Grace had no recollection of what the parking lot looked like after she fell, but she did see ice on the parking lot "[w]henever they[, *i.e.*, the paramedics,] got [her] up." *Id*. at 49, R.77a. She saw no "accumulation of ice, meaning ice that was raised . . . above the pavement, where it was bumpy, lumpy, kind of ice[.]" *Id*.

Taken in its totality, Grace's testimony established generally slippery conditions. Between when Grace returned home with her son from his karate lesson and when she left for her job interview at the property, ice accumulated on Grace's car where it had not been before. Her sidewalk leading up to her car was slippery. Some of the roads she drove on were slick. Freezing rain and snow occurred prior to, during, and after her fall.[5] As there is no genuine

---

[5] Notably, Grace did not testify as to what she believed precipitated her fall. *See*, *e.g.*, Grace Deposition, 5/26/21, at 49, R.77a (Grace testifying that she did not look around after she fell to see the condition of the parking lot, though when the paramedics arrived to pick her up, she noticed "ice and some snow," but no "accumulation of ice").

issue of material fact about whether there were generally slippery conditions leading up Grace's fall, we cannot say the trial court abused its discretion in applying the hills and ridges doctrine.[6]  Grace is therefore due no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2023

---

[6] Grace relies principally upon ***Tonik v. Apex Garages, Inc***., 275 A.2d 296 (Pa. 1961) and ***Harvey Rouse Chamberlin, Ltd.***, 901 A.2d 523, 526 (Pa. Super. 2006) in support of her assertion of error.  ***See*** Grace's Brief at 18-21. Each of these cases is distinguishable.  In ***Tonik***, our Supreme Court held that the hills and ridges doctrine did not apply because the "accident [must have] occurred at a time when general slippery conditions prevailed in the community, ***which is not the case here***."  275 A.2d at 298 (emphasis added).  There had been "no recent precipitation" in ***Tonik***, but instead an isolated patch of ice in a crack in the sidewalk on which Tonik slipped and fell. ***See id***.  Similarly, in ***Harvey***, there was a snowstorm, following by plowing, followed by Harvey slipping and falling on black ice.  ***See*** 901 A.2d at 525; ***accord id***. at 527 (this Court noting that evidence "suggest[ed] that the condition of the land was influenced by human intervention . . .[, and,] given . . . [the] interaction with the ***snow*** *via* plowing, the ***ice*** in this case could not have been the result of an ***entirely natural*** accumulation") (emphases in original; internal quotations omitted).  Contrary to the facts in ***Harvey***, here, there was freezing rain and snow just before Grace fell.