J-A02034-24

2025 PA Super 36

| GARY WHITTINGTON AND DONNA WHITTINGTON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| | : | No. 1734 MDA 2022 |
| JOE DANIELS | : | |

Appeal from the Judgment Entered January 31, 2023
In the Court of Common Pleas of Franklin County
Civil Division at No(s):  2017-02792

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.:　　　　　　　　**FILED: FEBRUARY 19, 2025**

Gary and Donna Whittington ("the Whittingtons") appeal from the judgment entered against them and in favor of Joe Daniels ("Appellee"), in this action for conversion.  For the reasons discussed below, we affirm.

The trial court detailed the underlying facts:

On or about April 29, 2015, [the Whittingtons] entered [] a contract with [Appellee] for the construction of a new home. . . . The [Whittingtons] were represented by a realtor, Dawn Crilley-Shank [("Crilley-Shank")], and [Appellee] was represented by a realtor, Arlene Unger [("Unger")].  The parties entered into a standard agreement for the sale of new construction.  [Appellee] alleges that the contract required that the [Whittingtons make] a non-refundable $10,000 deposit.  The [Whittingtons] allege that the $10,000 went toward upgrades on a new construction townhome which had not yet been built.

[Appellee] moved the start date on the contract several times, but eventually began [work] in the late Spring and early Summer of 2015 and construction of the building began in the Fall of 2015. On or about October 5, 2015, [the Whittingtons] pulled their existing home . . . off the market and gave [Appellee] written notice [("the termination agreement")] cancelling the contract,

stating the reason for the cancelation being that they could not meet the sale contingency. The [Whittingtons] thought that [Appellee] would return their $10,000 and became aware that he would not return the money after a phone call . . . between [the parties] in October of 2015.

Trial Court Opinion, 2/13/23, at 5-6 (unnecessary capitalization and record citations omitted).

On April 10, 2017, acting *pro se*, the Whittngtons filed a complaint seeking return of the $10,000 with a magisterial district justice (the "MDJ complaint"). **See** Civil Complaint, 4/10/17 at 1 (unnumbered). On June 27, 2017, the MDJ found in favor of the Whittingtons and awarded them $10,000 in damages. **See** Notice of Judgment, 6/27/17, at 1 (unnumbered). On July 13, 2017, Appellee filed and served a timely notice of appeal accompanied by a praecipe to enter a rule to file a complaint. **See** Notice of Appeal, 7/13/17, at 1 (unnumbered). The Whittingtons did not file a complaint and Appellee never filed a praecipe to enter a judgment of *non pros*.

On July 1, 2020, the trial court file a notice of intent to terminate the case. **See** Notice of Intent to Terminate Case, 7/1/20, at 1 (unnumbered). The Whittingtons' counsel filed a complaint on July 10, 2020. **See** Complaint, 7/10/20, at 1. The complaint contained four causes of action: (1) breach of contract; (2) unjust enrichment; (3) unfair trade practices;[1] and (4)

---

[1] The trial court agreed with Appellee that the unfair trade practices claim should not be heard by the jury; the court stayed a bench trial on that claim pending resolution of the instant appeal. **See** Trial Court Opinion, 2/13/23, at 2 n. 1.

misappropriation/conversion. ***See id***. at 1-5. Two years of extensive litigation followed. A jury trial took place in November 2022.

At trial, Gary Whittington testified on October 5, 2015, he signed the termination agreement Crilley-Shank, his real estate agent, prepared that called for Appellee to return the $10,000, and became aware later that month that Appellee would not return the money. ***See*** N.T., 11/21/22, at 16-17. He also testified he could not recall specific details because, "it was seven years ago[.]" ***Id***. at 8.

Crilley-Shank stated she prepared the termination agreement and communicated with Appellee and his realtor but could not provide the details of the communications because she had changed jobs during the seven years between the termination and trial and no longer had access to her emails from the former job. ***See id***. at 137-38. She confirmed, however, the Whittingtons signed the termination agreement on October 5, 2015, and she forwarded it to Appellee that day. ***See id***. at 140.

Appellee admitted his realtor informed him of the Whittingtons' request for termination on October 5, 2015, ***see*** N.T. 11/22/22, at 24, but testified he refused to sign the agreement and refund the $10,000 to the Whittingtons, ***see id***. at 26. Appellee did not personally inform the Whittingtons he would not return their money. ***See id***. at 29.

Unger, Appellee's real estate agent, confirmed Appellee's testimony regarding his review of the termination agreement and his refusal to agree to

return the $10,000. *See id*. at 77-78, 96-97. Unger testified she notified Crilley-Shank the day she received the termination agreement that Appellee would not be returning the deposit. *See id*. at 98. Unger could not recall if that date was October 5, 2015. *See id*. at 101.

Prior to deliberations, both parties moved for directed verdicts. The Whittingtons asserted Appellee "did not meet his burden to establish the [d]ate of [a]ccrual for the cause of action[;]" Appellee claimed the Whittingtons filed the complaint after the running of the statute of limitations. Trial Court Opinion, 2/13/23, at 2-3. The trial court denied both motions because the question of the date of accrual was a question of fact for the jury. *See id*. at 2. The jury found in favor of Appellee on the Whittingtons' breach of contract and unjust enrichment claims, but in favor of the Whittingtons on the conversion claim. *See id*. at 3. The jury ascertained the date of accrual of the claim was October 15, 2015; awarded the Whittingtons $10,000 in damages; and rejected their punitive damages claim. *See id*.

Appellee then moved for a directed verdict on the conversion claim based upon the jury's determination regarding the date of accrual. *See id*. The trial court granted the motion. *Sed id*. at 4. The Whittingtons moved for reconsideration; the trial court denied the motion. *See id*. The instant, timely appeal followed.[2]

---

[2] The Whittingtons and the trial court complied with Pa.R.A.P. 1925.

On appeal, the Whittingtons raise the following questions:

a. Did the trial court err in denying [the Whittingons'] motion for a directed verdict as to a finding of a date of accrual for the causes of action raised in this case when there was no evidence of record to support the assignment of October 15, 2015[,] by the jury?

b. Did the trial court err as a matter of law by instructing the jury as to the statute of limitations during opening jury instructions and again in the final charge over trial counsel's objections and without providing a curative instruction to the jury?

c. Did the trial court err as a matter of law by entering a directed verdict in favor of [Appellee] as to the statute of limitations affirmative defense when the [Whittingtons] timely filed their action in the [MDJ] court, [Appellee] appealed the award for [the Whittingtons] to the Court of Common Pleas but failed to file a praecipe for *non pros* subsequent to filing the appeal in the Court of Common Pleas as required by Pa.R.C[iv].P. 1037(a)?

Whittingtons' Brief at 9 (unnecessary capitalization corrected).

In their first issue, the Whittingtons contend the trial court erred in denying their motion for a directed verdict.[3] ***See*** Whittingtons' Brief at 13-17.

A directed verdict may be granted only where the facts are clear and there is no room for doubt. In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must

---

[3] The Whittingtons also appear to contend the evidence was insufficient to support the jury's determination of the date of accrual of the claim. ***See*** Whittingtons' Brief at 9. However, the Whittingtons moved for a directed verdict **prior to the jury's deliberations**. Thus, the jury's determination is irrelevant to the trial court's decision to deny their motion for a directed verdict. As the Whittingtons have not raised a separate claim regarding the sufficiency of the evidence, we will not further address this issue.

accept as true all evidence which supports that party's contention and reject all adverse testimony.

***Keffer v. Bob Nolan's Auto Service, Inc.***, 59 A.3d 621, 632 (Pa. Super. 2012) (quotation marks and citation omitted).

> We will reverse a trial court's grant or denial of a directed verdict . . . only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which a directed verdict . . . can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With [a directed verdict], the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor.

***Hall v. Episcopal Long Term Care***, 54 A.3d 381, 395 (Pa. Super. 2012) (brackets and citation omitted).

The Whittingtons maintain Appellee "failed to present sufficient evidence to establish his affirmative defense of statute of limitations." The Whittingtons' Brief at 13-15.

The trial court disagreed explaining:

> Neither party established, through a definitive date, when the [Whittingtons] knew that they were harmed. The question of when the [Whittingtons] were allegedly harmed became a matter of fact, and therefore, permissible for the jury to determine. In order for the [trial c]ourt to make a determination of law regarding [Appellee's] statutory limitations affirmative defense, a finding of fact was necessary. The jury, not the judge, determines questions of fact.

At trial, [Appellee] established [he] refused to sign the notice of termination and agreement of sale document in October of 2015. [Unger] testified that she received documentation that indicated that the [Whittingtons] were terminating the agreement of sale. She could not remember the specific date[] but was sure that the termination occurred in October of 2015.

Trial Court Opinion, 2/13/23, at 8 (record citations and footnote omitted).

We have thoroughly reviewed the record and discern no abuse of discretion or error of law in the trial court's denial of the Whittingtons' motion for a directed verdict. **See Hall**, 54 A.3d at 395. The trial evidence demonstrates the parties recognized the critical events regarding the termination of the agreement and Appellee's refusal to return the $10,000 occurred in October 2015. The statute of limitations for conversion is two years. **See** 42 Pa.C.S.A. § 5524(3). The Whittingtons filed their complaint in July 2020, thus they were not entitled to a directed verdict based on their assertion Appellee failed to establish an affirmative defense of statute of limitations. The Whittingtons' first issue does not merit relief.

In their second issue, the Whittingtons maintain the trial court, "incorrectly instructed the jury regarding the statute of limitations in the opening jury instructions and final charge." Whittingtons' Brief at 17.

With respect to jury charges:

We review the trial court's jury instructions for an abuse of discretion or legal error controlling the outcome of the case. A jury charge will be found to be adequate unless, when read in its entirety, the charge confused the jury, misled the jury, or contained an omission tantamount to fundamental error. It must appear that the erroneous instruction may have affected the jury's

- 7 -

verdict. Consequently, the trial court has great discretion in forming jury instructions.

***Meyer v. Union R. Co.***, 865 A.2d 857, 862 (Pa. Super. 2004) (citations, brackets, and quotation marks omitted).

Here, the Whittingtons do not point to any specific error in the opening instruction or final charge. ***See id***. at 17-22. Rather, they complain "the statute of limitations [is] a question of law and not fact," ***id***. at 17, and thus should have been decided by the trial court, not the jury, ***see id***. at 17-22.

The trial court did not submit the issue of the statute of limitations to the jury but rather charged it to find the date of accrual of the Whittingtons' claim. ***See*** Trial Court Opinion, 2/13/23, at 9-11. The trial court further explained:

> The date of accrual was a determination of fact which was then determined by the jury. [The trial c]ourt properly instructed the jury as to the matters they would be deliberating at the conclusion of the trial. The [trial c]ourt then used the jury's factual determination to make its legal conclusion regarding [Appellee's] statut[e of] limitations affirmative defense. [The trial c]ourt did not err in its instructions to the jury.

***Id***. at 11 (unnecessary capitalization omitted).

The Whittingtons do not point to any portion of either the opening charge or closing jury instructions which was erroneous. ***See*** Whittingtons' Brief at 17-22. Our review does not demonstrate the charges "confused the jury, misled the jury, or contained an omission tantamount to fundamental error." ***See Meyer***, 865 A.2d at 862. Moreover, the record supports the trial court's explanation it charged the jury to determine the date of accrual, not

whether the complaint was filed within the two-year statute of limitations. *See* N.T., 11/18/22, at 35-36; N.T., 11/22/22, at 176-77. This Court has clearly stated the date of discovery of a claim for statute of limitations purposes presents a question of fact for a jury's determination. *See Sabella v. Appalachian Development Corp.*, 103 A.3d 83, 93 (Pa. Super. 2014). The Whittingtons' second claim does not merit relief.

The Whittingtons third and final issue asserts the trial court erred in entering a directed verdict for Appellee, based on the statute of limitations. *See* Whittingtons' Brief at 22-28.

As discussed above, "[w]e will reverse a trial court's grant . . . of a [directed verdict] only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *Hall*, 54 A.3d at 395. In discussing statutes of limitation, this Court has specifically noted our policy favors "the strict application of statutes of limitation." *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 441 (Pa. Super. 2003) (citation omitted). Our Supreme Court has stated:

> As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; *lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations*, even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Once the prescribed statutory period has expired, the party is barred from

- 9 -

bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.

*Pocono Int'l. Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) (citations, emphasis, and quotation marks omitted; emphasis added).

The Whittingtons maintain they filed the MDJ complaint within the statute of limitations. *See* Whittingtons' Brief at 22. They further allege Appellee did not perfect his appeal with the Court of Common Pleas. *See id*. at 25. Lastly, they ask for a liberal construction of their complaint because they acted *pro se* during the MDJ process and its immediate aftermath. *See id*. at 27.

The trial court opined:

> [T]he [Whittingtons'] argument is not grounded in case law that applies to the specific facts in the present matter. Neither the [Whittingtons'] nor [Appellee] cited binding precedent that involved appeals from a [MDJ] determination. Upon the [trial c]ourt's own independent review of prior precedent, the present case lies in a gray area of the law.
>
> * * * * *
>
> In the present case, [Appellee] compelled the [Whittingtons] to file a complaint after he filed an appeal from the MDJ's determination. They received notice and despite the $10,000 determination that the MDJ made in the [Whittingtons'] favor, they did not file their complaint. [Appellee] then failed to follow through and file a praecipe for *non pros*. The case then remained stagnant where neither party filed any motions nor praecipes until [the trial c]ourt issued a notice of intent to terminate case . . . almost three years after [Appellee] filed his notice of appeal. [Appellee's] failure to file a praecipe prevented [Appellee] from being awarded a judgment of *non pros*. However, this failure, without clear case law to support otherwise, should

- 10 -

> not bar [Appellee] from asserting a properly plead affirmative defense. . . . [Conflating] a praecipe for *non pros* with a statute of limitations affirmative defense [would lead to an unjust result]. These are two completely different requests from the court and should be treated as such.

Trial Court Opinion, 2/13/23, at 12-13 (unnecessary capitalization omitted; italics added).

The question of whether filing an MDJ complaint tolls the statute of limitations is a matter of first impression, as is the question of whether an appeal from an MDJ complaint is perfected if the plaintiffs fail to file a timely complaint and the defendant does not praecipe for entry of a judgment of *non pros*.

The Whittingtons argue they "preserved the statute of limitations on all matters related to the real estate transaction" by filing a timely MDJ complaint. Whittingtons' Brief at 13. Appellee disagrees, maintaining "[t]he filing of a complaint before a[n] [MDJ] is not the equivalent to the filing of a writ of summons or a complaint in the Court of Common Pleas" and thus does not toll the statute of limitations. Appellee's Brief at 3.

MDJ courts serve a critical role in the Pennsylvania legal system. They provide a cost-effective alternative where litigants can represent themselves in disputes involving small amounts of money without incurring the costs of filing cases in the Courts of Common Pleas, and the challenge of understanding the attendant complex procedural rules. More than 90,000 civil cases were filed in Pennsylvania's MDJ courts in 2022, the most recent year for which

statistics are available. **See** Supreme Court of Pennsylvania, Caseload Statistics of the Unified Judicial System of Pennsylvania (2022). To hold, as Appellee suggests, that filing a complaint with a MDJ does not serve to toll the statute of limitations would result in increased litigation in the overburdened Courts of Common Pleas, and unnecessary delays and costs in litigating simple cases.

Such a result would also be at odds with other jurisprudence concerning the effects of filing cases in the MDJ courts. In **A.C. Elfman & Sons, Inc. v. Clime**, 513 A.2d 488 (Pa. Super. 1986), this Court opined "where the doctrine of *res judicata* is otherwise applicable, its invocation will not be precluded or impaired because the prior judgment was entered in [an MDJ Action]." **Id**. at 490 (citations omitted). In a recent memorandum, relying on **Elfman**, this Court held where an MDJ entered a verdict in a case and neither party appealed, but one party later filed a civil complaint arising from the same sets of facts, the doctrine of *res judicata* barred the action. **See Durand v. JR Beard, LLC**, 2023 WL 6366708, at *4 (Pa. Super., 9/29/23) (unpublished memorandum).[4] It would be inconsistent to hold that MDJ actions have a preclusive effect on future litigation but that they have no effect on the statute of limitations.

---

[4] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

However, we cannot agree with the Whittingtons that filing a complaint with a MDJ indefinitely tolls the statute of limitations. This Court rejected an argument the statute must run from the last act of alleged attorney malpractice rather than the first, noting that "[t]here is no 're-set' button to start the limitations period all over again." ***Communications Network Int'l., Ltd. v. Mullineaux***, 187 A.3d 951, 965 (Pa. Super. 2018). The Court held that "to do so would defeat the fundamental purpose of the statute of limitations scheme, which is to avoid stale claims. Over time, memories fade, witnesses may disappear or die, and evidence may be lost." ***See id***. (refusing to toll the statute of limitations on equitable grounds where the appellants failed to exercise due diligence in pursuing their claims).

We conclude the filing of a MDJ complaint tolls the statute of limitations ***during the pendency of that case***. However, if a defendant perfects an appeal and properly serves the plaintiff with a praecipe to file a complaint, the statute of limitations begins to run again at the expiration of the twenty-day period in which the plaintiff is required to file a complaint. ***See*** Pa.R.C.P.M.D.J. 1004(B).

The Whittingtons maintain Appellee never perfected the appeal in this matter because he failed to file a praecipe for entry of judgment of *non pros*. ***See*** Whittingtons' Brief at 25-26. However, the Whittingtons have not pointed to any persuasive authority for this argument.

With respect to the appeal of MDJ actions, the rules provide:

- 13 -

> If the appellant was the defendant in the action before the magisterial district judge, he shall file with his notice of appeal a praecipe requesting the prothonotary to enter a rule as of course upon the appellee to file a complaint within twenty (20) days after service of the rule or suffer entry of a judgment of *non pros*.

Pa.R.C.P.M.D.J. 1004(B). There is nothing in Rule 1004(B) which requires the defendant to file for entry of a judgment of *non pros*, rather the Rule simply requires the praecipe inform the plaintiff that entry of *non pros* is a possibility if they do not file a complaint within the designated period. ***See id***.

Our Rules of Civil Procedure state an action commences when a litigant files with the prothonotary:

(1) a praecipe for a writ of summons, or

(2) a complaint.

Pa.R.Civ.P. 1007. The filing of either document tolls the statute of limitations. ***See Lamp v. Heyman***, 366 A.2d 882 (Pa. 1976). In ***Lamp***, the Supreme Court condemned what it called "a relatively common practice" of filing a writ of summons to toll the statute of limitations but delaying service on the defendant. ***See id***. at 886. The Court held the onus is ***on the plaintiff*** to ensure a writ of summons is both filed and served within the statute of limitations, and the failure to do so will not be excused unless the plaintiff has a good-faith explanation for his conduct. ***See id***. at 889.

In a recent memorandum, ***Foster v. Sugarhouse Casino***, 2021 WL 3929383 (Pa. Super. 9/2/22) (unpublished memorandum), we affirmed the dismissal of a complaint on statute of limitations grounds where the plaintiffs

filed a writ of summons and complaint within the statute of limitations, withdrew the complaint without prejudice, and refiled it at the end of the statutory period but "inadvertently" failed to serve it until after the statute of limitations expired. *See Foster*, 2021 WL 3929383 at \*1. We rejected the Fosters' argument for a tolling of the statute of limitations because the initial complaint of which the defendant had actual notice contained the "nucleus" of the amended complaint. *Id*. at \*2, \*4. We stated because the plaintiff withdrew the original complaint, the defendants "were entitled to assume the matter had been resolved[.]" *See id*. at \*4.

Reading the above-cited rules and cases in conjunction, the following principles become clear. A defendant perfects an appeal by complying with Pa.R.C.P.M.D.J. 1004(B), *i.e.* by filing an appeal accompanied by a praecipe for a rule to file a complaint. Once a defendant has done so, the burden shifts to the plaintiff to commence the action by filing and serving a complaint both within the twenty-day period proscribed by Pa.R.C.P.M.D.J. 1004(B) and prior to the expiration of the relevant statute of limitations. *See* Pa.R.Civ.P. 1007; *Lamp*, 366 A.2d at 885-89. If the plaintiff does not do so, the defendant can reasonably assume the matter is resolved. *See Foster*, 2021 WL 3929383, at \*4.

Here, the record reflects the Whittingtons became aware of Appellee's refusal to return the $10,000 in October 2015.[5]  **See** Trial Court Opinion, 2/13/23, at 3.  Thus, at the latest, the statute of limitations would expire on November 1, 2017.  **See** 42 Pa.C.S.A. § 5524(3).  The Whittingtons filed the MDJ complaint on April 10, 2017.  Giving the Whittingtons the benefit of the latest possible date of accrual, one year, five months, and nine days had run on the two-year statute of limitations by the time the Whittingtons filed the MDJ complaint.  Once the Whittingtons filed the complaint, the statue was tolled until July 13, 2017, the date of service of the appeal and praecipe.  **See** Notice of Appeal, 7/13/17, at 1 (unnumbered).  Thus, the statute of limitations on the Whittingtons' claim would have expired, at the latest, on Friday, August 4, 2017.  The Whittingtons did not file their complaint until July 10, 2020, almost three years later.  The only explanation offered by the Whittingtons for the delay in filing the complaint was that Gary Whittington was under "a lot of stress" and believed he "would get a letter from [the trial court]."  N.T., 11/21/22, at 26.  We are cognizant of the Whittingtons' *pro se* status during the relevant period, but *pro se* litigants proceed at the risk that their lack of training and experience will prove costly.  We have stated:

---

[5] While the Whittingtons take issue with the October 15, 2015, date selected by the jury as the date of the accrual of the claim, they do not dispute that, at the latest, they became aware of the refusal by the end of October 2015. **See** Trial Court Opinion, 2/13/23, at 6; N.T., 11/21/22, at 17 (Gary Whittington testifies he became aware in October 2015 of Appellee's refusal to refund the $10,000 in dispute).

[Appellants are] not entitled to any particular advantage because [they] lacks legal training. As our [S]upreme [C]ourt has explained, any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing.

***Branch Banking & Trust v. Gesiorski***, 904 A.2d 939, 942 (Pa. Super. 2006) (citation omitted). Because the Whittingtons failed to file their complaint before the expiration of the statute of limitations, we affirm the trial court's grant of a directed verdict. ***See Communication Network Int'l.***, 187 A.3d at 965; ***Pocono Int'l. Raceway***, 468 A.2d at 471.

Judgment affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>02/19/2025</u>