J-A25003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VALENTYNA ILIUK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VILLAGE OF PENNBROOK | : | No. 1011 EDA 2025 |
| APARTMENTS, ABC CORPORATION 1- | : | |
| 3, JOHN/JANE DOE 1-3, FALLS | : | |
| TOWNSHIP, PLATINUM PAVING AND | : | |
| SEALCOATING, VILLAGE OF | : | |
| PENNBROOK 2, LLC | : | |

Appeal from the Judgment Entered July 18, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2023-00634

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED MARCH 19, 2026**

Valentyna Iliuk appeals from the judgment entered upon a directed verdict in favor of Appellee Village of Pennbrook Apartments (Pennbrook) and dismissing Iliuk's claims.[1]  After review, we affirm on the basis of the well-written opinion authored by the Honorable Jeffrey R. Sommer.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court's initial February 12, 2025 order granting Pennbrook's motion for a directed verdict was announced at trial but not entered upon the trial court docket.  Iliuk then filed a motion for reconsideration of the directed verdict on February 21, 2025.  The trial court denied that motion on March 5, 2025.  Iliuk then filed a timely appeal from the February 12, 2025 order.  The February 12, 2025 oral order, not having been entered upon the trial court's docket, was not yet an appealable order.  *See* Pa.R.A.P. 301(a)(1) ("[N]o
*(Footnote Continued Next Page)*

We adopt the trial court's factual summary set forth in its opinion, **see id.** at 1-6, and provide only an abbreviated version here. Iliuk began living at Pennbrook's eponymous property in 2013 or 2014. **See** N.T. Trial, 2/10/25, at 45. On February 7, 2021, a snowstorm began in Levittown, Pennsylvania between 6:30-7:00 a.m., starting as a wintry mix before turning into snow and eventually tapering off between 3:30-4:00 p.m. after leaving approximately 3.5 inches of snow accumulation. **Id.**, 2/11/25, at 50-51. Pennbrook's maintenance staff began clearing snow and salting the walkways

_____

order of a court shall be appealable until it has been entered upon the appropriate docket in the trial court."). Accordingly, this Court issued a directive for Iliuk to enter judgment upon the verdict, which she subsequently did. **See id.** at (d) ("[T]he clerk of the trial court shall, on praecipe of any party . . ., forthwith prepare, sign, and enter an appropriate order, judgment, or final decree in the docket[.]"). Judgment was entered upon the verdict on July 18, 2025. Because Iliuk's appeal was filed after the announcement of the trial court's determination but before the entry of an appealable order, we treat the appeal as if it was filed after such entry and on the day thereof. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

Furthermore, the underlying action initially included claims against defendants Falls Township, Platinum Paving & Sealcoating LLC, John/Jane Doe 1-3, and ABC Corporation 1-3. The claims against Falls Township and Platinum Paving & Sealcoating LLC were dismissed via stipulation on January 9th and January 13th, 2025, respectively. The claims against Jane/John Doe 1-3 and ABC Corporation 1-3 were not disposed of by the trial court's dismissal order. However, the unidentified defendants were never identified on the docket, never entered an appearance, and were never served. Therefore, even if the trial court's dismissal order did not dispose of the complaint as to all named defendants, the unidentified defendants never became parties to the action and, accordingly, are not parties to this appeal. **See Hill v. Ofalt**, 85 A.3d 540, 546 n.5 (Pa. Super. 2014) (defendant that never entered an appearance and was never served with process was not "a party to the action").

- 2 -

around 3:30-4:00 p.m. on the 7th and were still working at 12:40 a.m. on the morning of the 8th. *Id.* at 28, 42. Around 12:40 a.m. on the 8th, Iliuk took her dog for a walk. *Id.*, 2/10/25, at 46, 66. While out on the walk, Iliuk slipped and fell and hit her head on the sidewalk. *Id.* at 47-48.

On February 2, 2023, Iliuk commenced an action against Pennbrook alleging it had been negligent in, *inter alia*, failing to take appropriate measures to remedy its property after the snowfall, and that such negligence was the direct and proximate cause of Iliuk's damages. Iliuk sought compensatory damages in excess of $50,000.00, punitive damages, interest, costs, attorneys' fees, and whatever additional relief the trial court deemed appropriate.

A jury trial was held from February 10 to February 12, 2025. On February 12, 2025, after the close of evidence, Pennbrook's counsel moved for a directed verdict based upon the evidence presented. Counsel posited that Iliuk had not met her burden of proof by a preponderance of the evidence, and that Pennbrook had "acted reasonably at all times and did its job by shoveling the sidewalk and spreading salt and doing everything that it was supposed to under the reasonable [person] standard." N.T. Trial, 2/12/25, at 11-12. The trial court granted the motion for a directed verdict and dismissed the case.

Iliuk filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She raises the following issues for our review:

1. Did the [trial] court commit an error by entering a directed verdict based on the facts elicited at trial and the applicable law?

2. Did the [trial] court commit an error by applying the "hills and ridges" doctrine in the instant matter?

3. Did the [trial] court commit an error by not allowing the jury to determine the reasonableness of the snow remediation performed by [Pennbrook]?

4. Did the [trial] court commit an error by allowing [Pennbrook's] weather expert Thomas M. Else to testify that he saw "black ice" in a photograph which was outside the scope of his report?

Appellant's Brief, at 6.

Our well-established standard of review is as follows:

A directed verdict may be granted only where the facts are clear and there is no room for doubt. In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony.

**Whittington v. Daniels**, 332 A.3d 102, 107 (Pa. Super. 2025) (quoting

**Keffer v. Bob Nolan's Auto Service, Inc.**, 59 A.3d 621, 632 (Pa. Super.

2012)) (quotation marks and citation omitted).

We will reverse a trial court's grant or denial of a directed verdict . . . only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a directed verdict . . . can be entered[:] one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With [a directed verdict], the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor.

- 4 -

***Whittington***, 332 A.3d at 107 (quoting ***Hall v. Episcopal Long Term Care***, 54 A.3d 381, 395 (Pa. Super. 2012)) (some brackets and citation omitted).

Iliuk's first three issues are interrelated and, thus, we address them as one issue.[2]  The crux of Iliuk's first three issues is that the trial court erred in granting Pennbrook's directed verdict where:  (1) Iliuk put forth sufficient evidence at trial such that the reasonableness of Pennbrook's snow removal efforts should have been decided by the jury; and (2) the trial court erred in its application of the hills and ridges doctrine[3] to preclude recovery.  ***See*** Appellant's Brief, at 14-25.

In support of the argument that the reasonableness of Pennbrook's snow removal efforts should have gone to the jury, Iliuk avers that, based upon several evidentiary reasons, she established that Pennbrook's snow removal efforts were not reasonable.  ***Id.*** at 17-19.  Based on the foregoing, Iliuk contends that the question of whether Pennbrook breached a duty should have gone to the jury.  ***Id.***

Iliuk next argues that the trial court incorrectly applied the hills and ridges doctrine because there was "clear evidence of 'human intervention' in the creation of the localized patch of ice that caused [Iliuk's] fall."  ***Id.*** at 24.

_____

[2] We note that Iliuk's argument for her first three issues is couched under one heading in her brief.  ***See*** Appellant's Brief, at 14-25 (titling argument section "The Trial Court Committed an Error by Not Allowing the Jury to Determine the Reasonableness of the Snow Remediation Performed by Appellee").  While this is in violation of our appellate briefing rules, ***see*** Pa.R.A.P. 2119(a), we decline to find waiver on this basis.

- 5 -

This argument relies upon Iliuk's assertion that "[t]he ice was not formed by a[n] 'entirely natural phenomenon' such that the hills and ridges doctrine applies." *Id.* Ultimately, Iliuk concludes that because of the "undisputed 'human intervention[,]'" the hills and ridges doctrine should not have applied, and, even if it were applicable, the testimony presented was sufficient such that "the jury should have decided if [Iliuk] was unable to recover." *Id.* at 25.

To prevail in a negligence action, a plaintiff must prove the defendant "owed a duty of care to the plaintiff, that the duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Collins v. Philadelphia Suburban Development Corp.*, 179 A.3d 69, 73 (Pa. Super. 2018) (quoting *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 980 A.2d 502, 506 (Pa. 2009)). In the context of an invitee bringing a suit for negligence in the maintenance of property against the landowner,

> [a] land possessor is subject to liability for physical harm caused to an invitee only if the following conditions are satisfied:
>
>> [the land possessor] knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, [the possessor] should expect that the invitee will not realize it or will fail to protect [herself] against it, and the [possessor] fails to exercise reasonable care to protect the invitee against the danger.
>
> *Estate of Swift v. Northeastern Hosp. of Philadelphia*, [] 690 A.2d 719, 722 ([Pa. Super.] 1997) (citation omitted). An invitee must present evidence proving "either the [possessor] of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Id.* . . .

The hills and ridges doctrine, "as defined and applied by the courts of Pennsylvania, is a refinement or clarification of the duty owed by a possessor of land and is applicable to a single type of dangerous condition, i.e., ice and snow." ***Wentz v. Pennswood Apartments***, [] 518 A.2d 314, 316 ([Pa. Super.] 1986). ***See Williams v. Shultz***, [] 240 A.2d 812, 813–14 ([Pa.] 1968) (indicating that the doctrine of hills and ridges applied to preclude liability where "the accident occurred at a time when general slippery conditions prevailed in the community as a result of recent precipitation") (citations omitted[)].

In order to recover for a fall on an ice[-] or snow[-]covered surface, a plaintiff must show:

> **(1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; [and] (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.**

This Court has further opined that "the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove [the snow and ice] when it is in a dangerous condition."

***Biernacki*** [***v. Presque Isle Condominiums Unit Owners Ass'n, Inc.***], 828 A.2d [1114,] 1117 [(Pa. Super. 2003)] (quotations omitted).

As this Court has held, "the hills and ridges doctrine may be applied only in cases where the snow and ice complained of are the result of an entirely natural accumulation following a recent snowfall[.]" ***Harvey v. Rouse Chamberin, Ltd.***, 901 A.2d 523, 526 (Pa. Super. 2006) (quotation marks, quotation, and emphasis omitted[)]. Further, "the protection afforded by the doctrine is predicated on the assumption that '[t]hese formations are [n]atural phenomena incidental to our climate[.]'" ***Id.*** (quotation and citation omitted).

***Collins***, 179 A.3d at 73–74 (emphasis added).

Here, we agree with the trial court's analysis and application of the hills and ridges doctrine. *See* Trial Court Opinion, 4/17/25, 11-15. The trial court correctly concluded that Iliuk

> failed to provide any evidence that the alleged ice was created by [Pennbrook]'s actions, as opposed to natural accumulation. On the contrary, senior forensic meteorologist Thomas Michael Else explained that the general slippery conditions in the community were a result of temperature fluctuations during and after the storm, a natural phenomenon incidental to our climate, which led to the refreezing of melted snow.

*Id.* at 11. The record does not indicate that the ice Iliuk slipped on was anything but "the result of an entirely natural accumulation following a recent snowfall." *Harvey*, 901 A.2d at 526. Further, based upon the nature of the remedial measures taken and the resulting dangerous condition—the salting and shoveling of a sidewalk as opposed to snowbanks created by plowing the road—we also consider the cases Iliuk relies upon—*Bacsick*[4] and *Harvey*—distinguishable from the case before us.[5] Therefore, the trial court correctly determined that the "human intervention" exception to the hills and ridges doctrine does not apply here.

Further, the trial court correctly held that Iliuk did not put forward sufficient evidence that "an accumulation, whether in the form of ridges or other elevations, was of such size and character to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon." Trial Court

---

[4] *See Bacsick v. Harvey*, 341 A.2d 157, 160 (Pa. Super. 1975) (considering snowbank created by plowing and that blocked access to the sidewalk to be "of artificial origin").

Opinion, 4/17/25, 11-12 (citing **Collins**, 179 A.3d at 74). Accordingly, the hills and ridges doctrine applies and precludes Iliuk from recovery here.[6] **See Collins**, 179 A.3d at 74**.**

Mindful of the record, the applicable standard of review, the relevant caselaw, and the parties' briefs, we affirm on the basis of the trial court's thorough and well-reasoned opinion. **See** Trial Court Opinion, 4/17/25, at 1-20. The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment affirmed.

Ford Elliott, PJE., Joins this Memorandum.

Bowes, J., Files a Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/19/2026

---

[6] Because the doctrine applies, Iliuk cannot recover for the circumstances presented and, thus, the reasonableness of Pennbrook's remedial measures are moot. Additionally, because of our disposition of Iliuk's first three issues, her fourth issue—whether the trial court erred in admitting certain expert testimony—is moot, and we will not consider it here.