J-A25003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VALENTYNA ILIUK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VILLAGE OF PENNBROOK | : | No. 1011 EDA 2025 |
| APARTMENTS, ABC CORPORATION 1- | : | |
| 3, JOHN/JANE DOE 1-3, FALLS | : | |
| TOWNSHIP, PLATINUM PAVING AND | : | |
| SEALCOATING, VILLAGE OF | : | |
| PENNBROOK 2, LLC | : | |

Appeal from the Judgment Entered July 18, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2023-00634

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

DISSENTING MEMORANDUM BY BOWES, J.:   **FILED MARCH 19, 2026**

The learned Majority affirms the trial court's decision to grant a directed verdict in favor of Pennbrook.  Since I find that the trial court abused its discretion in concluding that the hills and ridges doctrine precluded Iliuk's negligence action, I respectfully dissent.

Fundamentally, I disagree with how the trial court considered the evidence presented in this case in determining whether Pennbrook was entitled to a directed verdict.  To reiterate, the principles governing review of such a motion are as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

A directed verdict may be granted only where the facts are clear and there is no room for doubt. In deciding whether to grant a motion for a directed verdict, **the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony.**

We will reverse a trial court's grant or denial of a directed verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a directed verdict can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With a directed verdict, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor.

**Whittington v. Daniels**, 332 A.3d 102, 107 (Pa.Super. 2025) (cleaned up, emphasis added), *appeal granted on other grounds,* 344 A.3d 1059 (Pa. 2025).

Turning to the pertinent doctrine, we have explained:

The doctrine of hills and ridges provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

The hills and ridges doctrine protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations.

- 2 -

*Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 526 (Pa.Super. 2006) (cleaned up). Critically, it "may be applied only in cases where the snow and ice complained of are the result of an **entirely natural accumulation**, following a recent snowfall, as . . . the protection afforded by the doctrine is predicated on the assumption that these formations are natural phenomena incidental to our climate[.]" *Id*. (cleaned up, emphasis in original).

With this in mind, I turn to the evidence presented in this case. Pennbrook acknowledged that it was responsible for clearing the apartment buildings' sidewalks by shoveling and salting following snowfalls, and that it had on-site maintenance staff to perform that task. *See* N.T. Jury Trial, 2/10/25, at 93-94. On February 7, 2021, it snowed in the relevant area until about 4:00 p.m. *See* N.T. Jury Trial, 2/11/25, at 51. Thereafter, the maintenance team began shoveling and salting the sidewalks.

Iliuk, a tenant, took her chihuahua, Rocky, for a walk around midnight. By that time, the maintenance supervisor believed that the sidewalks had been shoveled and a first pass of salt application had occurred. Moments before her fall at 12:40 a.m., Iliuk encountered a maintenance worker walking towards her and salting the sidewalk she was about to traverse with a salt spreader, purportedly completing his second pass in that regard. Iliuk picked up Rocky and stepped off the sidewalk to allow him to continue salting the sidewalk where she had just been. *Id*. at 24-25, 33-34; N.T. Jury Trial, 2/10/25, at 46-47.

Once Iliuk returned to the sidewalk and began walking again, she "just slipped and . . . fell exactly on the back of [her] head." N.T. Jury Trial, 2/10/25, at 47. After regaining consciousness, she observed that she had fallen "[o]n a patch of ice." *Id*. at 48. Iliuk averred that the ice on which she slipped "was bumpy and uneven" and she could not see it before the fall. *Id*. at 49. Viktor Zavinskyy, who lived in the building adjacent to where Iliuk fell and at the time of trial had become her husband, aided her and took a picture of the relevant portion of sidewalk. He similarly noted that the ice was "bumpy." *Id*. at 87. Zavinskyy believed that the ice formation was related to water that would come down a nearby downspout. *Id*.

Pennbrook presented testimony from, *inter alia*, Thomas Michael Else, a senior forensic meteorologist who reconstructs weather events. He opined that any melted snow or slush from the February 7 snowfall would have refrozen into solid ice in the late evening hours before Iliuk's fall. *See* N.T. Jury Trial, 2/11/25, at 51. Looking at Zavinskyy's picture of where the fall occurred, Else observed that the sidewalk had been shoveled and he could detect "glare ice," which he described as similar to black ice and could be seen when light shines on its surface. *Id*. at 53.

After Iliuk rested, but before Else testified, Pennbrook moved for a compulsory non-suit:

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiffs' evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence.

- 4 -

> When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.

***Hong v. Pelagatti***, 765 A.2d 1117, 1121 (Pa.Super. 2000) (cleaned up).

> The trial court denied the motion, elucidating as follows:

> The legal concept of hills and ridges is something that I would have to instruct the jury upon, but based upon some of the testimony, whether they credit the plaintiff herself or her husband, . . . Zavinskyy, about bumpiness and how and where it comes from, that's a jury question of fact. I can't put my thumb on the scale. So I'm going to deny your motion at this time.

N.T. Jury Trial, 2/11/25, at 20. However, after Else's testimony had been presented, Pennbrook moved for a directed verdict, which the court granted. In doing so, it determined that Pennbrook had acted reasonably by shoveling and salting the sidewalks after the snowfall. ***See*** N.T. Jury Trial, 2/12/25, at 15. The court explained that it had "considered all the evidence" and "a variety of cases," and dismissed Iliuk's case. ***Id***. at 18-19.

Thereafter, in its Rule 1925(a) opinion, the trial court expounded that it granted the motion based upon an application of the hills and ridges doctrine because Iliuk "failed to provide any evidence that the alleged ice was created by [Pennbrook's] actions, as opposed to natural accumulation." Trial Court Opinion, 4/17/25, at 11. In so concluding, the court emphasized the meteorologist's expert testimony and held that despite evidence of Pennbrook salting the sidewalk, Iliuk "introduced no evidence to sustain the claim that

she fell on ice traceable to [Pennbrook's] salting activity, rather than conditions naturally incident to the weather." *Id*.

At trial, the court cited *LaCroix v. Tri-State Props. LLC*, 256 A.3d 19, 2021 WL 1886182 (Pa.Super. 2021) (non-precedential decision), in support of its ruling. *See* N.T. Jury Trial, 2/12/25, at 18. In that case, we affirmed an order granting summary judgment in favor of the defendants based upon the hills and ridges doctrine where the defendants had salted the sidewalk before the plaintiff fell:

> [T]he [trial] court concluded that there was no genuine issue of material fact that the sidewalk and parking lot . . . were generally slippery as a result of ongoing precipitation at the time of Appellant's fall. In addition, the court concluded that the evidence indicated that these conditions were prevalent in the community at the time of the fall, and observed that Appellant had not alleged the existence of hills and ridges of snow and ice. Accordingly, the court concluded that there was no genuine issue of material fact in dispute. The record supports this conclusion.

*LaCroix*, 2021 WL 1886182, at *6.

As a non-precedential decision, this case at most holds persuasive value. In any event, I find its application inapt. Iliuk averred that the ice on which she fell was bumpy. Furthermore, unlike *LaCroix* where there was an active freezing rain event creating slippery conditions throughout the community at the time the plaintiff fell, the matter at hand concerned cleanup efforts on a sidewalk roughly eight hours after a snowfall, and the shoveling and salting conducted by Pennbrook altered the naturally occurring conditions such that

Iliuk's negligence action would not be precluded by the hills and ridges doctrine.

Critically, by placing more weight on the meteorologist's testimony and discounting that offered by Iliuk and Zavinskyy, the court failed to consider the evidence in the light most favorable to Iliuk as the non-moving party. Upon a proper application of the standard for a directed verdict, it is plain to me that there was room for doubt regarding the pertinence of the hills and ridges doctrine given the evidence that Pennbrook's staff had been shoveling and salting and thereby potentially interfering with the natural accumulation of snow and ice. *See Harvey* (explaining that "the evidence introduced by Appellants in this case suggests that the condition of the land was influenced by human intervention. In other words, given Watts'[s] interaction with the **snow** *via* plowing, the **ice** in this case could not have been 'the result of an **entirely natural** accumulation.'" (emphases in original)).

As noted, Iliuk and Zavinskyy both attested that the ice was bumpy, and Zavinskyy's testimony suggested that Pennbrook's downspout impacted the ice formation where Iliuk fell. Accordingly, the jury could have inferred that this patch of sidewalk had accumulated ice in a manner that was not naturally occurring, but created by Pennbrook in some manner. Ultimately, considering the evidence in the light most favorable to Iliuk and rejecting all adverse evidence, as required when reviewing a request for a directed verdict, I find that the trial court abused its discretion by taking away from the jury the question of whether the hills and ridges doctrine applied and, if the jury

finds it does not apply, whether the snow remediation efforts were reasonable. Therefore, I would reverse the court's order directing a verdict in favor of Pennbrook and remand for a new trial.[1]

---

[1] As I would remand for a new trial, I would not reach the question of whether the trial court erred in letting Else testify about black ice despite it not being mentioned in his expert report.  *See* Iliuk's brief at 25-28.